In re Willis and Patricia ELIAS,
Debtors–Appellees.

Appeal of FIRESIDE TERRACE CON-
DOMINIUM ASSOCIATION.

No. 88 C 6098.

United States District Court,
N.D. Illinois, E.D.

March 14, 1989.

Theda C. Snyder, Chicago, Ill., for debt-
ors-appellees.

George D. Downs, Palatine, Ill., for ap-
pellant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Fireside Terrace Condominium Associa-
tion (Fireside) appeals from the bankruptcy
court's order holding it in contempt for
continuing an action in Illinois state court
to recover condominium assessments in vio-
lation of 11 U.S.C. sec. 524(a)(2).

### I

On 30 July 1983 Willis and Patricia Elias
filed for bankruptcy under Chapter 7 of the
United States Bankruptcy Code, 11 U.S.C.
701 et seq. Fireside was listed as a credi-
tor in the Eliases' A–2 schedule. And the
debt to Fireside, along with the others in
the schedule, was discharged on September
12.

Nearly two years later, on 9 August 1985
Fireside filed suit against the Eliases in
Illinois Circuit Court seeking to recover
assessment fees which had accrued both
pre- and postpetition. By letter dated 3
October 1985, the Eliases' attorney, Rich-
ard Fogel, advised Fireside's attorney,
George Downs, of the discharge of the debt
in the previous bankruptcy action, and
asked Mr. Downs to refrain from pursuing
the state court action further.

Mr. Downs responded with alacrity—the
very next day—taking the position that
since the Eliases were discharged as of 30
July 1983 (the date they filed their Chapter
7 action), Fireside was still entitled to as-
sessments coming due after July 30; he
advised Mr. Fogel that Fireside would
"take a judgment" for the postpetition as-
sessments on 29 October 1985.

October 29 came and went without Fire-
side taking a judgment. Apparently little
else happened in the case until 20 February
1986, when Fireside amended its complaint
to reflect the fact that it was seeking to
recover only assessments arising after the
discharge. And that same day (indeed in
the same order granting Fireside leave to

amend its complaint), the Illinois Circuit Court found the Eliases in default and entered judgment in Fireside's favor in the amount of $7,042.24 plus court costs.

Like most litigants with judgment in hand, Fireside began taking steps to turn it into money in hand (aptly called "executing" on the judgment). After being served with a writ of attachment, the Eliases finally showed up and petitioned the court (pursuant to Ill.Rev.Stat. ch. 110, par. 2-1401) to vacate the default judgment because the debt which Fireside sought to collect had been discharged in the prior bankruptcy proceeding, and because they never received notice of Fireside's motion to "apportion the debt"—amend the complaint?—into pre- and postpetition amounts.

The court granted the Eliases' motion to vacate, ruling that the action was "void ab initio" due to the discharge in bankruptcy, and that Fireside's amendment to the complaint did not cure that defect; the court also ruled that Mr. Downs's October 4 letter to Mr. Fogel did not, for purposes of "due process", constitute sufficient notice to the debtors regarding Fireside's motion for default judgment. Fireside appealed to the Illinois Appellate Court.

After both sides had briefed the issues in state court, the Eliases filed a petition in bankruptcy court to enjoin Fireside from continuing its appeal, and for an order finding that Fireside had acted in contempt of court by pursuing the state court action. And on 6 June 1988, Judge Katz entered an order finding Fireside in civil contempt and awarded $2,163.10 in damages to the Eliases. Fireside appeals from this order.

## II

We must decide two principal issues: (1) whether Fireside violated sec. 524(a)(2) by pursuing its state court action, and (2) if so, whether the bankruptcy court properly en-tered a finding of civil contempt against Fireside. And to those issues we now turn.

## A

The first issue presents an interesting question of statutory interpretation. We must decide whether condominium assessments which arise out of a prepetition contract but come due after the discharge has been granted constitute a debt within the meaning of 11 U.S.C. secs. 101(11) and 727(b). As we shall see, the courts that have addressed this issue are divided. But first we examine the relevant statutory language. *United States v. Ron Pair Enterprises, Inc.,* —— U.S. ——, ——, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

Section 727(b) discharges a debtor "from all debts that ar[i]se before the date" the petition for relief is filed. A "debt" is defined as "liability on a claim." Sec. 101(11). The existence of a debt thus depends on whether the creditor has a "claim" against the debtor. "Claim" means a "right to payment, whether or not such right is * * * contingent * * *." Sec. 101(4). The definition of "claim" is "broad." *Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985).

Does Fireside have a claim against the Eliases for the amount of postpetition assessments? Unquestionably. No doubt Fireside's right to payment is contingent[1], at least as of the time that the Eliases filed their bankruptcy petition, for it was not certain that they would continue to be the owners of the condominium; but a contingent right to payment is still a claim for purposes of the Code.

Is Fireside's claim a "debt"? The statute itself provides no certain answer. But according to the Code's legislative history, the answer once again is "yes" because "[t]he terms 'debt' and claim are coextensive. That is, a creditor has a 'claim'

---

1. "Contingent" means: "Possible, but not assured; doubtful or uncertain; conditioned upon some future event which is itself uncertain or questionable. * * * [It] implies that no present interest exists, and that whether such interest or right will exist depends upon a future uncertain event." *Black's Law Dictionary* 290 (5th ed.

1979). *See, e.g., Grady v. A.H. Robbins Co., Inc.,* 839 F.2d 198 (4th Cir.1988) (plaintiff's tort suit against defendant was a claim within the meaning of sec. 101(4) where it was based on prepetition conduct, but injury manifested itself postpetition).

against the debtor and the debtor owes a 'debt' to the creditor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977); see also S.Rep. No. 989, 95th Cong., 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5809, 6267. As one court has noted, however, debts are limited to claims for which there is liability, thus implying that the term "claim" is broader than the term "debt." *In re King*, 9 B.R. 376, 7 BCD 395, 396 (Bkrtcy.D.Or.1981). In an effort to construe these definitions in a manner consistent with the legislative history, one commentator suggests that the "[l]iability simply means the debtor has to pay." R. Ginsberg, *Bankruptcy*, Para. 10, 011 n. 6 (1988). And this reading is reasonable: liability is "a broad legal term. * * * It has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely." *Black's Law Dictionary* 823 (5th ed. 1979). It includes "any kind of debt or liability, either absolute or contingent, * * * [the] condition of being actually or potentially subjected to an obligation." *Id.* It would seem, then, that the term "liability" need not delimit the universe of claims that constitute "debts" under the Code; rather, the definitions are simply different ways of describing the same thing: a "claim" from the creditor's perspective is a "debt" from the debtor's.

But what of the cases addressing this issue? The courts are divided. *In re Rosteck*, 95 B.R. 558 (N.D.Ill.1988), *Rink v. Timbers Ass'n I, Inc.*, 87 B.R. 653 (Bkrtcy. D.Colo.1987), and *In re Horton*, 87 B.R. 650 (Bkrtcy.D.Colo.1987), hold that condominium assessments which come due after the date of discharge do not constitute a dischargeable debt in a Chapter 7 proceeding. *Behrens v. Woodhaven Association*, 87 B.R. 971 (Bkrtcy.N.D.Ill.1988), aff'd, 1989 WL 24067, U.S. Dist. LEXIS 2298 (N.D.Ill. Mar. 7, 1989), goes the other way.

We begin with *Behrens*. There, a condominium association sued the debtors in state court for breach of contract to recover postpetition assessments after the debtors had received a Chapter 7 discharge. After the association obtained a judgment in its state court action, the debtors petitioned the bankruptcy court to hold the association in contempt for violating the permanent injunction imposed by sec. 524(a)(2). The association countered that the postpetition assessments were not discharged under sec. 727(b) because the debtors' obligation to pay arose at the time the assessments were made, after the petition was filed. The court found the association's reasoning unpersuasive. It held the association in contempt, finding that it made no difference that the actual assessments were made postpetition. Rather, "[t]he key [was] that [the association was] seeking to enforce a personal obligation of the [d]ebtors based on a prepetition contract." 87 B.R. at 975. The court reasoned that any other result would enfeeble the Code's goal of providing honest individual debtors with a "fresh start", and undermine the deliberately broad protections against unknowing, inadvertent, or involuntary reaffirmations of prepetition agreements (see secs. 524(c) and (d)). Accord *In re Rosteck*, 85 B.R. 73 (Bkrtcy.N.D.Ill.), rev'd, 95 B.R. 558 (N.D.Ill.1988). Cf. *In re Cox*, 53 B.R. 829 (Bkrtcy.M.D.Fla.1985).

Now for the other side of the coin. *In re Horton*, 87 B.R. 650 (Bkrtcy.D.Colo.1987), held that postpetition assessments were not subject to discharge under sec. 727(b); and that a creditor's state court action to recover such assessments did not violate sec. 524(a). The court held that the Code distinguishes between a debt and liability. It relied on a committee report which stated that sec. 524(a) "voids any judgment to the extent that it is a determination of the personal liability of the debtor with respect to a *pre-petition* debt * * *." *Id.* at 652 (emphasis in original). The "debt" is extinguished, the "liability" is not. Under the contract the association did not have a "'right to payment'—and hence, a claim— within the meaning of [sec.] 101(4)(A) until each monthly installment [came] due." See also *Rink v. Timbers Homeowners Association I, Inc.*, 87 B.R. 653 (Bkrtcy.D.Colo. 1987) (adopting *Horton*'s reasoning in relevant part). We find this reasoning less than compelling.

First, the court's reliance on the committee report language begs the question: we are trying to determine what constitutes a prepetition debt for discharge purposes; and this language does not specify how that determination is to be made. The court's reliance on this particular portion of legislative history is also suspect in light of other sections which demonstrate (to the extent that committee reports can do so, see *Hirschey v. FERC*, 777 F.2d 1, 6–8 (D.C.Cir.1985) (Scalia, J.)), that Congress intended otherwise. *See, e.g.*, H.R.Rep. No. 595, 95th Cong., 1st Sess. 310 (1977), U.S.Code Cong. & Admin.News 1978, p. 6267, quoted at page 5 above.

Nor are we persuaded by the court's distinction between a debt and liability. What the court held, in effect, is that only claims accrued prepetition are debts under the Code. *Horton* was able to reach the conclusion that the postpetition assessments did not constitute a debt only by severely restricting the definition of a claim. And this interpretation is at loggerheads with the statute's wording. After all, the definition of a "claim" includes *contingent* rights to payment. And *Horton* has effectively read this language out of the statute. A reasonable person could not read sec. 101(4)(A) and understand it to mean what *Horton* says it means. See generally Mathews, *The Scope of Claims Under the Bankruptcy Code*, 57 Am. Bankr.L.J. 221, 339 (1983) (two installments). While such a change in the law might be wise, it would be, in our view, a *change* in the law; and that is a job for the political rather than the judicial branches.

Maybe *Horton*, like *King*, was postulating that because a debt requires liability on a claim, the universe of claims necessarily is broader than (and wholly inclusive of) the universe of debts. At first blush this position is appealing. But only at first blush. As we saw above, the legislative history indicates that Congress intended the terms "debt" and "claim" to be coextensive, that the terms reflect different ways of saying the same thing—a debt from the debtor's perspective is a claim from the creditor's. But more importantly it vitiates a hefty section of sec. 101(4)(A)

by effectively exempting contingent claims from the reach of dischargeability.

This leaves *In re Rosteck*, 95 B.R. 558 (N.D.Ill.1988). In *Rosteck*, the District Court reversed a bankruptcy court's decision holding a condominium association in contempt for filing a lawsuit in state court seeking to recover postpetition assessments. In support of its decision, the District Court relied on *Rink v. Timbers Homeowners Association I, Inc.*, 87 B.R. 653 (Bkrtcy.D.Colo.1987), for the proposition that postpetition assessments are not debts within the meaning of sec. 101(11). The court did not bother to distinguish (or even cite) *Behrens* or otherwise explain why it found *Rink* persuasive. The lack of explanation is not surprising, however; for *Rink* relied on *Horton* in reaching its conclusion, and therefore suffers from the same flaws as *Horton*.

The District Court also thought that the rule of *In re Harvey*, 88 B.R. 860 (Bkrtcy. N.D.Ill.1988), which held that postpetition assessments are not discharged in a Chapter 13 proceeding, is "properly applicable to Chapter 7 proceedings * * *." We respectfully disagree. *Harvey* did not hold that postpetition assessments were not debts for purposes of the Code; rather, it held that although postpetition assessments are debts, they are not discharged under Chapter 13 when the debtor uses the plan to cure his default on the payments as a long-term installment debt. See secs. 1328(a)(1) and 1322(b)(5). *Harvey* thus rests on an express statutory exception to dischargeability; and that exception is restricted to Chapter 13. No similar exception is provided in Chapter 7. Possibly the court found Chapters 7 and 13 sufficiently similar because both offer benefits to individual debtors. This is true as far as it goes, but it doesn't go far enough. Chapter 7 provides an honest individual debtor with a "fresh financial start" by protecting his future assets (primarily his "human capital") at the expense of other assets existing at the time of filing (which become part of the estate). Chapter 13, on the other hand, offers individual debtors a way to work out their existing financial obligations by pro-

tecting some of their existing assets at the expense of some of their future ones. See generally T. Jackson, *The Logic and Limits of Bankruptcy Law* 272–73 (1986). The Chapters are thus intended to accomplish very different goals, and their discharge provisions are tailored accordingly. These differences, in turn, dissolve the initial appearance of similarity between the Chapters, and demonstrate why *Harvey* is inapplicable to a Chapter 7 proceeding.

The final reason offered by *Rosteck* is that it "is difficult, if not impossible, to extend [sec. 727(b)] to debts accrued postpetition." The court was distressed—understandably—with one possible consequence of holding postpetition assessments to be discharged debts for purposes of Chapter 7: it would seem to provide debtors with a "head start" rather than a "fresh start" by enabling them to reside in their homes unencumbered by assessments, no matter how long after the discharge. See, e.g., *Lines v. Frederick*, 400 U.S. 18, 21, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970) (Harlan, J., dissenting). We, too, are less than enthralled by this possibility, for it may cause more harm than good. See Shepard, *Personal Failures and the Bankruptcy Reform Act of 1978*, 27 J.L. & Econ. 419 (1984) (broad protections afforded to individual debtors create incentive for debtors to file for bankruptcy, and have led to substantial increase in personal bankruptcy filings). But we can see no statutory warrant for fashioning the exception recognized by *Rosteck*. Certainly, the court's reference to "debts accrued post-petition" cannot serve as the dividing line. We cannot read the definition of "debt" in so crabbed a manner and yet maintain fidelity to the expansive language set out by Congress. When a court decides a case governed by a statute, it resolves a dispute according to a command given by the political branches. See *Schroeder v. Copley Newspapers*, 691 F.Supp. 1127 (N.D.Ill.1988); Easterbrook, *Legal Inter-*

*pretation and the Power of the Judiciary*, 7 Harv.J.L. & Pub. Pol'y 87, 97 (1984). A court has no legitimate authority to revise legislative acts. Therefore, when the legislative branch speaks, as it has done here, we must obey its orders (assuming, of course, they are consistent with the Constitution).

We also find it significant that Congress was perfectly capable of excepting this type of debt from discharge when it wanted to—as it did in Chapter 13 proceedings, see *Harvey*, 88 B.R. 860 (Bkrtcy.N.D.Ill. 1988). But Congress did not make such an exception under Chapter 7.[2]

Finally, even acknowledging the possibility that a condominium owner who has received a discharge in bankruptcy may enjoy his home free from the burden of assessments, we are not persuaded that this result is "demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, ——, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989), *quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982); see also *Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 335, 414, 4 L.Ed. 629 (1816) (applying same rule in constitutional context). Nor are we convinced, as a practical matter, that the likelihood of such an outcome is cause for great concern. We see at least two obstacles standing in this path. First, upon commencement of the bankruptcy proceeding, the debtor's interest in the condominium becomes part of the estate. Sec. 541. And in a Chapter 7 case the trustee is obligated to "collect and reduce to money the property of the estate * * *." Sec. 704(1). So, if the debtor has an interest in his condominium that can be reduced to cash with which to satisfy creditors, then it seems safe to conclude his scot-free residence would be short-lived. Second, a Chapter 7 debtor retains posses-

---

**2.** It is important to recognize that *Horton* and *Rink* seem to hold that postpetition assessments are not "debts" within the meaning of the Code, whereas *Harvey* holds that although they are debts, they are not discharged (at least under Chapter 13). The distinction is important be-

cause it illustrates the proper analytical framework for determining whether a given (for lack of a better word) "debt" is discharged: (1) is the obligation a debt for purposes of sec. 101(11); and if so, it is discharged unless (2) it is subject to an exception.

sion of and title to the property only at the pleasure of the lienholders, who can—and, as in this case, did—foreclose on the debtor's mortgage. See *Behrens,* 87 B.R. at 975.

■ We decline to follow *Rosteck* and *Horton,* and instead hold that condominium assessments that accrue postpetition but arise out of a prepetition contract are "debts" within the meaning of sec. 101(11) and are dischargeable in a Chapter 7 proceeding. Therefore, Fireside's state court action to collect postpetition assessments from the debtors violated sec. 524(a)(2) of the Code.

### B

■ But even so, Fireside argues that the bankruptcy court erred by awarding attorney's fees to the debtors. In its brief Fireside seems nonplussed by the fact that the bankruptcy court did not specify the source of its authority for awarding fees. And in place of the bankruptcy court's silence Fireside maintains that Illinois law controls the awarding of fees; and under Illinois law (according to Fireside) fees cannot be awarded unless a litigant employs the judicial process in bad faith.

This argument is so far off the mark that it would be a waste of time and ink to address it. Illinois law is entirely irrelevant here. Federal law governs. The proceeding which gave rise to this appeal was a petition to hold Fireside in contempt for violating the permanent injunction imposed by virtue of a federal statute, sec. 524(a)(2). A bankruptcy court's power to issue contempt citations is a matter of federal, and not state, law. It is true that whether bankruptcy courts have this power is an issue over which the authorities are split, compare *In re Hamilton Allied Corp.,* 87 B.R. 43 (Bkrtcy.S.D.Ohio 1988); *Haile v. New York State Higher Educ. Services Corp.,* 90 B.R. 51 (W.D.N.Y.1988), with *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281 (9th Cir.1987), but Fireside does not sound a broad constitutional challenge. Nor does Fireside make the narrower argument that bankruptcy courts lack statutory authority to issue contempt citations for violations of sec. 524(a) (compare sec. 362(h) which authorizes bankruptcy courts to award sanctions for automatic stay violations). See *Behrens,* 87 B.R. at 976.

The most that can be made of Fireside's position is that the contempt citation was improperly issued because it did not pursue its state court claim in bad faith. Civil contempt, however, does not require a finding of willfulness or bad faith, for it serves a remedial rather than a punitive purpose. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1948). It is enough if the order violated is specific and definite, and that the offending party has knowledge of it.[3] *In re Worthing,* 24 B.R. 774 (Bkrtcy.D.Conn. 1982). Because Fireside does not challenge either the specificity or the precision of the discharge order, and because it is undisputed that Fireside prosecuted its claim in state court with full knowledge of the order, the decision of the bankruptcy court is

AFFIRMED.

---

**3.** The transcripts of the April 6 and June 2 hearings leave no doubt that the bankruptcy judge was under the mistaken impression—which neither party saw fit to correct—that the debtors' petition for contempt was sought for violations of an automatic stay under sec. 362(h) rather than for violations of a permanent injunction under sec. 524(a). Even if the mistake were significant, however, it would not matter here because Fireside has not raised it.