**In the Matter of William N. ROSTECK and Joyce M. Rosteck, Debtors.**

**Appeal of OLD WILLOW FALLS CONDOMINIUM ASSOCIATION.**

No. 89–2057.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1989.

Decided April 13, 1990.

S. Keith Collins, Lita Brody, Arlington Heights, Ill., for appellant.

John P. Brundage, Brundage & Associates, Chicago, Ill., for debtor-appellee.

Before BAUER, Chief Judge, FLAUM and MANION, Circuit Judges.

MANION, Circuit Judge.

In July 1981, William Rosteck and his wife, Joyce, purchased a condominium unit in Prospect Heights, Illinois. The condo-

minium was subject to a Declaration made pursuant to the Illinois Condominium Property Act, Ill.Ann.Stat. ch. 30, para. 301–331, that obligated the Rostecks to pay assessments levied by the Old Willow Falls Condominium Association (an association of condominium owners that we shall refer to as "Old Willow") for payment of common expenses. Old Willow's by-laws (to which the Declaration specifically referred) provided for its Board of Directors to establish an annual budget for common expenses. The Board was then to assess a portion of the budget to each condominium owner; each owner's assessment was payable in equal monthly installments.

In March 1983, the Rostecks purchased a new home. The Rostecks moved out of the condominium on April 1, 1983, without having sold it. After moving out of the condominium, the Rostecks failed to pay the monthly installments for assessments levied by Old Willow.

In September 1983, the Rostecks filed a petition for relief under Chapter 7 of the Bankruptcy Code. In their schedules, they listed Old Willow as a creditor, and described their debt as "possible liability for condo assessments...." The trustee filed a no-asset report, and abandoned his interest in the condominium. In December 1983, the bankruptcy court ordered the Rostecks' debts discharged. The discharge order, consistent with 11 U.S.C. § 524(a)(2), specifically provided that "All creditors whose debts are discharged by this order ... are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the debtor." [1]

After their bankruptcy case closed, the Rostecks continued to own the condominium, although they did not live in it. In the meantime, the delinquent installments continued to accrue. Two weeks after the Rostecks' discharge, Glenview State Bank,

holder of a first mortgage on the condominium, filed a foreclosure action in state court naming the Rostecks and Old Willow as defendants. In November 1984, the court entered a judgment of foreclosure against the Rostecks. The judgment also allowed Old Willow a lien for assessments Old Willow had levied against the condominium after the Rostecks had filed their bankruptcy petition. Old Willow's lien, however, was junior to Glenview's mortgage. In December 1984, the condominium was sold at a sheriff's sale. The sale, however, did not fetch sufficient funds to pay both Glenview's mortgage and Old Willow's lien, so Old Willow received nothing from the sale.

In May 1986, Old Willow obtained a deficiency judgment against the Rostecks for $6,421.75, the amount of post-petition assessments Old Willow had charged against the condominium. Old Willow subsequently attempted to collect this judgment from the Rostecks. The Rostecks responded to Old Willow's collection efforts by filing a petition for a rule to show cause against Old Willow in the bankruptcy court. The Rostecks contended that the bankruptcy court had discharged its obligation to pay post-petition assessments, and that Old Willow's collection attempts violated the court's discharge injunction. The bankruptcy court agreed, granted the Rostecks' motion, and held that Old Willow's deficiency judgment against the Rostecks was void under 11 U.S.C. § 524(a)(1), set out in n. 1, *supra. In re Rosteck,* 85 B.R. 73 (Bankr. N.D.Ill.1988). The court subsequently ordered Old Willow to pay the Rostecks' attorneys' fees as a sanction for violating the discharge injunction.

After the bankruptcy court denied Old Willow's timely motion to amend its factfindings, see Bankruptcy Rule 7052 (adopting Fed.R.Civ.P. 52 in bankruptcy adversary proceedings), Old Willow appealed to

1. Sections 524(a)(1) and (2) provide:
(a) A discharge in a case under this title
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged ...;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor....

the district court. The district court initially reversed the bankruptcy court. *In re Rosteck*, 95 B.R. 558 (N.D.Ill.1988). However, upon considering the Rostecks' timely motion under Fed.R.Civ.P. 59, the court vacated its earlier judgment and affirmed the bankruptcy court's decision. *In re Rosteck*, 99 B.R. 400 (N.D.Ill.1989). Old Willow filed a timely notice of appeal from the district court's judgment. The bankruptcy court's and district court's judgments were both final; therefore, we have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). Cf. *In re Behrens*, 900 F.2d 97 (7th Cir.1990).

■ The main issue in this appeal is whether the bankruptcy court's December 1983 discharge order discharged the Rostecks' obligation to pay condominium assessments levied after they filed their bankruptcy petition. If so, the discharge injunction bars Old Willow's efforts to collect its judgment from the Rostecks. If not, Old Willow is free to pursue its collection efforts. The answer to this question depends upon when the Rostecks' debt arose. Debts arising after the bankruptcy case has commenced are not discharged. See 11 U.S.C. § 727(b); *In re Elias*, 98 B.R. 332, 333 (N.D.Ill.1989); *In re Stern*, 44 B.R. 15, 20 (Bankr.D.Mass.1984). Old Willow argues that since it did not levy the assessments at issue until after the Rostecks filed their bankruptcy petition, the assessments were a post-petition debt and therefore not discharged. The Rostecks argue that since they agreed before the bankruptcy to pay whatever assessments Old Willow might levy in the future, the assessments arose out of a pre-petition contract and were therefore a pre-petition debt. The bankruptcy court and, ultimately, the district court, both held that the post-petition condominium assessments were pre-petition debt, and therefore dischargeable. We agree.

To determine when the Rostecks' debt arose, we must examine how the Bankrupt-

cy Code defines a "debt." Cf. *In re Energy Co-op, Inc.*, 832 F.2d 997, 1001 (7th Cir.1987). The Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(11). The Code, in turn, defines a "claim" in pertinent part as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

11 U.S.C. § 101(4). In *Energy Co-op* we held, based on this broad language, and on the legislative history consistent with this breadth, that in § 101(4) Congress gave the term "claim" " 'its broadest possible definition,' " and that under this broad definition, " 'all legal obligations of the debtor, *no matter how remote or contingent* will be able to be dealt with in the bankruptcy case.' " [2] We also held in *Energy Co-op* that "by defining a debt as a 'liability on a claim,' Congress gave debt the same broad meaning it gave claim." *In re Energy Co-op*, 832 F.2d at 1001. Thus, "when a debtor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor." *Id.*

■ Under those broad definitions of claim and debt, the Rostecks had a debt for future condominium assessments when they filed their bankruptcy petition. It is true that the Rostecks did not actually owe money to Old Willow for assessments beyond those Old Willow had assessed before their bankruptcy. But the condominium declaration is a contract, *Streams Sports Club Ltd. v. Richmond*, 99 Ill.2d 182, 75 Ill.Dec. 667, 457 N.E.2d 1226 (1983), and by entering that contract the Rostecks agreed to pay Old Willow any assessments it might levy. Whether and how much the Rostecks would have to pay in the future were uncertain, depending upon, among other things, whether the Rostecks continued to own the condominium and whether

---

**2.** *In re Energy Co-op*, 832 F.2d at 1001 (quoting S.Rep. No. 95–989, 95th Cong., 2d Sess. 22, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5808, and H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6266) (emphasis added in opinion). See also *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 200 (4th Cir.1988).

Old Willow actually levied assessments. But, as we have seen, contingent, unmatured, unliquidated, and unfixed debts are still debts. "Contingent" means: " 'Possible but not assured; doubtful or uncertain; conditioned upon some future event which is itself uncertain or questionable.... [I]t implies that no present interest exists, and that whether such interest or right will ever exist depends upon a future uncertain event.' " See *Grady*, 839 F.2d at 202 (quoting *Black's Law Dictionary* 290 (5th ed. 1979)); *In re Elias*, 98 B.R. at 333 n. 1. This definition describes perfectly the Rostecks' obligation for future assessments: they agreed to make payments, but whether and how much they actually had to pay depended on future uncertain events. The Rostecks thus had a debt for the future assessments under the Bankruptcy Code's broad definition of debt.[3]

Since the Rostecks' debt for future assessments, based on their pre-petition agreement to pay those assessments, existed when they filed their bankruptcy petition, that debt was discharged by the bankruptcy court in its discharge order.[4] This result is consistent with the Bankruptcy Code's goal of providing debtors a fresh start. As the bankruptcy court noted, by bringing even contingent and unliquidated claims into the bankruptcy case, " 'Congress has insured that the debtor will receive the complete discharge of his debts, without the threat of lingering claims "riding through" the bankruptcy.' " 85 B.R. at 75 (quoting *In re Baldwin–United Corp.*, 55 B.R. 885, 898 (Bankr.S.D.Ohio 1985)).

Old Willow contends that allowing debtors in bankruptcy to escape their obligations for post-petition condominium assessments will allow those debtors to reside in their homes as long as they wish, unencumbered by the obligation to pay assessments that their fellow condominium owners must pay. According to Old Willow, this is not a "fresh start;" it's a "head start." See *Elias*, 98 B.R. at 336. While this problem is admittedly troubling, we think the broad language Congress used in the Bankruptcy Code compels the result we reach. We have no power to change that language to reach a more palatable result. Contingent debts are still debts, and Congress has not exempted the type of debt in this case from discharge. See *id.* Moreover, as a practical matter, Old Willow's fear may be largely unfounded. If the trustee can sell the debtor's interest in his condominium for cash to pay creditors, the trustee will do so, and thus "it seems safe to conclude [the debtor's] scot-free residence would be shortlived." *Id.* And, as happened in this case, parties holding liens on the condominium (which includes the condominium association, which under Illinois law has a lien for unpaid assessments, see Ill.Ann.Stat. ch. 30, para. 309) can foreclose those liens and end the debtor's possession and ownership. *Id.* at 336–37.

Old Willow finally argues that even if it violated the discharge injunction by attempting to collect the post-petition assessments from the Rostecks, it was improper for the bankruptcy court to impose sanctions because its violation was not willful. According to Old Willow, 11 U.S.C. § 524(a)'s discharge injunction "supercedes" (or, as we believe Old Willow actually meant, replaces) the automatic stay granted by 11 U.S.C. § 362. Since § 362(h) allows a person injured by a willful viola-

---

**3.** Old Willow argues strenuously on appeal that Illinois law controls whether a "right to payment" exists, and that under Illinois law no right to payment exists until an assessment is actually levied. According to Old Willow, since there was no right to payment until the assessment was actually levied, there was no claim or debt. Old Willow, however, did not make this argument in the bankruptcy or district courts, and we are unwilling to consider an argument raised for the first time on appeal. See *Zayre v. SM & R Corp.*, 882 F.2d 1145, 1150, 1155–56 (7th Cir.1989). In any event, Old Willow's argument appears to be that because there was no money actually due, there was no debt. In other words, Old Willow in essence argues that a liability must be fixed and liquidated before it is a debt, an argument at odds with the Bankruptcy Code's definition of "debt."

**4.** Old Willow argued (or at least strongly hinted) in the bankruptcy court that the Rostecks' debt for post-petition assessments was not discharged because it was not properly scheduled. Old Willow does not make that argument in this court, so we do not have to consider it.

tion to recover damages (including costs and attorneys' fees), Old Willow asserts that only willful violations of the discharge injunction are sanctionable. Old Willow cites no authority for the propositions that sanctions for violating the discharge injunction require a willful violation, that § 362(h)'s willfulness requirement governs sanctions for violating the discharge injunction, or if that standard governs what constitutes a willful violation. Because of this lack of authority, we consider this argument waived. See Fed.R.App.P. 28 (argument must be accompanied by citation to authority); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir.1987) (perfunctory and undeveloped arguments deemed waived).

The district court's decision is

AFFIRMED.