**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PENNY D. GOUDELOCK, *Appellant*, | No. 16-35384 |
| v. | D.C. No. 2:15-cv-01413-MJP |
| SIXTY-01 ASSOCIATION OF APARTMENT OWNERS, *Appellee.* | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Senior District Judge, Presiding

Argued and Submitted February 6, 2018
Seattle, Washington

Filed July 10, 2018

Before: Milan D. Smith, Jr. and Mary H. Murguia, Circuit Judges, and Eduardo C. Robreno,[*] District Judge.

Opinion by Judge Robreno

---

[*] The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## SUMMARY**

---

### Bankruptcy

The panel reversed the district court's decision affirming the bankruptcy court's summary judgment in favor of a condominium association, which sought in an adversary proceeding to determine the dischargeability of a debtor's personal obligation to pay condominium association assessments that accrued between the date the debtor filed her Chapter 13 bankruptcy petition and the date the condominium unit was foreclosed upon.

Agreeing with the reasoning of the Seventh Circuit in a Chapter 7 case, the panel held that condominium association assessments that become due after a debtor has filed for bankruptcy under Chapter 13 are dischargeable under 11 U.S.C. § 1328(a). The panel concluded that the debt arose prepetition and was not among exceptions listed in § 1328(a). The panel held that the Takings Clause was not implicated because the condominium association retained its *in rem* interest. The panel also concluded that equitable arguments did not override the express provisions of the Bankruptcy Code.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Amanda K. Rice (argued), Jones Day, Detroit, Michigan; Nathaniel P. Garrett, Jones Day, San Francisco, California; Christina L. Henry, Henry DeGraaff & McCormick P.S., Seattle, Washington; for Appellant.

Stephen M. Smith (argued), Sound Legal Partners PLLC, Kenmore, Washington, for Appellee.

J. Erik Heath, San Francisco, California, as and for Amicus Curiae National Association of Consumer Bankruptcy Attorneys.

**OPINION**

ROBRENO, District Judge:

Appellant Penny Goudelock appeals the district court's affirmance of the bankruptcy court's grant of summary judgment in favor of appellee, Sixty-01 Association of Apartment Owners ("Sixty-01"). The issue is whether condominium association ("CA") assessments that become due after a debtor has filed for bankruptcy under Chapter 13 of the Bankruptcy Code are discharged upon confirmation of the plan. We have jurisdiction pursuant to 28 U.S.C. § 158(d)(1). We conclude that such assessments are dischargeable under 11 U.S.C. § 1328(a) and, accordingly, reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. Goudelock purchased a condominium unit in Redmond, Washington in 2001. Her deed was subject to a declaration of covenants and

restrictions (the "Declaration") that was recorded against the property in 1978. The Declaration provides that Sixty-01, a CA, may charge property owners assessments for monthly fees and for maintenance, repairs, and capital improvements.

The Declaration grants Sixty-01 two methods for collecting unpaid assessments. It provides that all unpaid assessments: (1) constitute a lien on the condominium unit, enforceable through foreclosure; and (2) create a personal obligation through which Sixty-01 can bring suit for damages against the owner of the condominium unit.[1]

---

[1] This is consistent with the applicable Washington law. In Washington, condominiums formed before 1990 are subject to the Horizontal Property Regimes Act ("HPRA"), codified at RCW § 64.32. Condominiums formed *after* July 1, 1990, are subject to the Washington Condominium Act ("WCA"), codified at RCW § 64.34, which was modeled after the Uniform Condominium Act. However, certain provisions of the newer WCA apply to pre-1990 condominiums. As relevant here, the WCA specifies that its provision governing a lien for assessments, RCW § 64.34.364, applies to pre-1990 condominiums "with respect to events and circumstances occurring after July 1, 1990," though it does not "invalidate or supersede existing, inconsistent provisions of the declaration." RCW § 64.34.010. Because Goudelock acquired her condominium in 2001, all events relating thereto necessarily occurred after July 1, 1990. Thus, to the extent that it is consistent with the Declaration, RCW § 64.34 defines the contours of the lien arising from Goudelock's unpaid assessments. Here, the Declaration and the WCA are consistent. Like the Declaration, the WCA establishes that an association "has a lien on a unit for any unpaid assessments levied against a unit from the time the assessment is due." RCW § 64.34.364(1). The WCA also provides that "[i]n addition to constituting a lien on the unit, each assessment shall be the joint and several obligation of the owner or owners of the unit to which the same are assessed as of the time the assessment is due." RCW § 64.34.364(12). An association may bring a "[s]uit to recover a personal judgment for any delinquent assessment . . . in any court of competent jurisdiction without foreclosing or waiving the lien securing such sums." *Id.*

Goudelock stopped paying the CA assessments in 2009 and Sixty-01 sought to enforce its lien by initiating foreclosure proceedings in state court. Goudelock moved out of her condominium unit and, in March of 2011, filed for bankruptcy under Chapter 13. As part of her Chapter 13 plan, Goudelock surrendered the condominium unit. Sixty-01 filed a proof of claim attesting to $18,780.39 in unpaid CA assessments and noted that they continued to accrue at a monthly rate of $388.46. Before the plan was confirmed by the bankruptcy court, Sixty-01 canceled the foreclosure sale because the mortgage lender paid the outstanding assessments. The condominium unit sat unoccupied until February 26, 2015, when the mortgage lender foreclosed on it. On July 24, 2015, Goudelock completed her plan obligations and received a discharge pursuant to 11 U.S.C. § 1328(a).

Meanwhile, in April of 2015, Sixty-01 had brought suit in the United States Bankruptcy Court for the Western District of Washington to determine the dischargeability of Goudelock's personal obligation to pay the post-petition CA assessments that had accrued between March 2011 (when Goudelock filed her Chapter 13 petition) and February 2015 (when the condominium unit was foreclosed upon). The bankruptcy court granted summary judgment in Sixty-01's favor, concluding that the post-petition CA assessments "were not dischargeable because they arose at the time of their assessment and were an incidence of legal ownership of the burdened property." *Goudelock v. Sixty-01 Ass'n of Apartment Owners,* No. C15-1413-MJP, 2016 WL 1365942, at *1 (W.D. Wash. Apr. 6, 2016) (summarizing the bankruptcy court's holding). The court rejected Goudelock's argument that the personal obligation to pay CA assessments was a pre-petition debt under 11 U.S.C. § 1328(a) that arose when she initially purchased the condominium unit. *Id.*

Goudelock appealed, and the district court affirmed the bankruptcy court's grant of summary judgment. *Id.* at 2. Goudelock then filed a timely appeal in this court.

## II.  STANDARD OF REVIEW

"This court reviews de novo a district court's decision on appeal from a bankruptcy court" as well as "[t]he bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).

## III.   ANALYSIS

No circuit court of appeals has addressed the dischargeability of CA assessments that have become due after the filing of a Chapter 13 petition. There are, however, two appellate decisions addressing the dischargeability of similar post-petition assessments under Chapter 7. Moreover, a number of lower courts have imported the teachings of these two appellate decisions under Chapter 7 to the dischargeability of post-petition association assessments under Chapter 13. The two appellate decisions (and their progeny) represent polar opposite positions and their applicability to Chapter 13 cases is the starting point of our analysis.

First, in *Matter of Rosteck*, 899 F.2d 694 (7th Cir. 1990), the Seventh Circuit Court of Appeals found that the obligation to pay CA assessments was an unmatured contingent debt under the Bankruptcy Code that arose pre-petition (when the debtors purchased the property) and that merely became mature when the assessments became due post-petition. *Id.* at 696–97. As a result, the debt for future assessments was dischargeable, which the court held was

"consistent with the Bankruptcy Code's goal of providing debtors a fresh start." *Id.* at 697.

A contrasting view was articulated in *In re Rosenfeld*, 23 F.3d 833 (4th Cir. 1994), wherein the Fourth Circuit Court of Appeals held that the obligation to pay cooperative association assessments ran with the land and arose each month from the debtor's continued post-petition ownership of the property. *Id.* at 837. Thus, the court concluded that any assessments due and payable after the filing of the Chapter 7 petition were not dischargeable as they were not pre-petition debts. *Id.* at 838.[2]

Both lines of reasoning have been relied upon by lower courts in this circuit when considering the dischargeability of post-petition association assessments under Chapter 13, ultimately reaching competing results. *Compare In re Coonfield*, 517 B.R. 239, 243 (Bankr. E.D. Wash. 2014) (following *Rosteck*'s reasoning and concluding "that the claim against [the debtors] for association assessments arose pre-petition and includes obligations for ongoing assessments"), *with In re Foster*, 435 B.R. 650, 660–61 (B.A.P. 9th Cir. 2010) (applying *Rosenfeld*), *and In re Batali*, No. WW-14-1557-KiFJu, 2015 WL 7758330, at *8–9 (B.A.P. 9th Cir. 2015) (applying *Rosenfeld* and *Foster*).

---

[2] As noted above, *Rosteck* and *Rosenfeld* were both Chapter 7 cases. In 1994 Congress embraced *Rosenfeld* and rejected *Rosteck* by providing that post-petition assessments are not dischargeable under Chapter 7 per 11 U.S.C. § 523(a)(16). While Congress applied this exception from discharge to Chapter 7, 11, and 12 petitions, as well as Chapter 13 petitions where a debtor is discharged without completing her payments (under 11 U.S.C. § 1328(b)), Congress notably omitted the exception for Chapter 13 petitions where a discharge follows full payment under the plan (under 11 U.S.C. § 1328(a))—which is the posture of this case.

We agree with the reasoning of *Rosteck* and conclude that its teachings in the Chapter 7 context are applicable to Chapter 13 cases. Sixty-01 obtained two state law remedies under the Declaration to address the failure to pay CA assessments: an *in rem* remedy of a lien and right of foreclosure; and an *in personam* remedy allowing it to bring suit against the property owner. While the *in rem* lien is not dischargeable under Chapter 13, the pre-petition *in personam* obligation is. It is Goudelock's *in personam* obligation that ultimately is at issue in this case.

### A. The Personal Obligation to Pay CA Assessments Is a Debt Under Section 1328(a)

A Chapter 13 discharge is intended to be a "discharge of all debts," barring a few enumerated exceptions. 11 U.S.C. § 1328(a). Bankruptcy proceedings are intended to grant debtors a "fresh start," *Grogan v. Garner*, 498 U.S. 279, 286 (1991), and, as a result, the Bankruptcy Code "is to be construed liberally in favor of debtors," *In re Devers*, 759 F.2d 751, 754 (9th Cir. 1985). Moreover, in that Chapter 13 is the preferred route for personal bankruptcy, "[a] discharge under Chapter 13 'is broader than the discharge received in any other chapter.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 268 (2010) (quoting 8 Collier on Bankruptcy ¶ 1328.01, p. 1328–5 (rev. 15th ed. 2008)).

The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C § 101(12). In turn, 11 U.S.C. § 101(5)(A) defines a "claim," (and thus, a debt) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

unsecured."**[3]** This definition of a claim is very broad, encompassing all of a debtor's obligations "*no matter how remote or contingent*." *In re SNTL Corp.*, 571 F.3d 826, 838 (9th Cir. 2009) (quoting *In re Jensen*, 995 F.2d 925, 929 (9th Cir. 1993)); *see also, e.g.*, *Rosteck*, 899 F.2d at 696; *In re Christian Life Ctr.*, 821 F.2d 1370, 1375 (9th Cir. 1987) (stating that Congress intended to provide "'the broadest possible definition' of claims so that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" (quoting S. Rep. No. 95-989, at 22 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5808)).

Thus, the obligation to pay CA assessments is a debt since it creates a right to payment. *See* 11 U.S.C. § 101(5)(A). The fact that the future assessments may be a contingent and unmatured form of the debt does not alter this analysis. *See, e.g.*, *id.*; *SNTL Corp.*, 571 F.3d at 838.

## B. The CA Assessment Debt Arose Pre-Petition and Is Dischargeable

Neither party disputes that only debts arising pre-petition may be discharged. Federal law determines when a claim arises under the Bankruptcy Code. *SNTL Corp.*, 571 F.3d at 839. In the Ninth Circuit, courts use the "fair contemplation" test to determine when a claim arises. *Id.* This test provides that "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *Id.* Sixty-01 does not contest seriously that Goudelock's *in personam*

---

**[3]** Section 101(5)(B) includes an additional definition of "claim" regarding the right to an equitable remedy. 11 U.S.C. §101(5)(B). However, that definition is not relevant here.

obligation meets the fair contemplation test. Here, at the time of the purchase of the condominium unit, Sixty-01 fairly could have contemplated that the monthly CA assessments would continue to accrue based upon Goudelock's continued ownership of the condominium unit. Thus, Goudelock's *in personam* obligation to pay CA assessments arose pre-petition when she purchased the condominium unit. *See Rosteck*, 899 F.2d at 696 (concluding that the debtors "had a debt for future condominium assessments when they filed their bankruptcy petition" in light of the pre-petition obligation in the declaration).

Before becoming due each month, the assessments, which are part of the pre-petition debt, are unmatured and are also contingent upon continued ownership of the property. Unmatured contingent debts are, however, dischargeable under Section 1328(a). 11 U.S.C. § 101(5)(A); *see Coonfield*, 517 B.R. at 242 (providing that a homeowners association "possesses its claim by virtue of [the debtors] acquiring title to the condominium and subsequent assessments are a consequence of, and mature from, the act that gave rise to such claim. Thus, absent the debtors' pre-petition act of taking title, the Homeowners Association would not have a claim").

In this case, Goudelock's personal obligation to pay CA assessments was not the result of a separate, post-petition transaction but was created when she took title to the condominium unit. As a result, the debt for the assessments arose pre-petition and is dischargeable under Section 1328(a), unless the Bankruptcy Code provides an exception to discharge.

### C. The Personal Debt Arising from CA Assessments Is Not Excepted from Discharge under Section 1328(a)

Subsections 1328(a)(1)–(4) enumerate the only exceptions to the broad discharge of debts under Section 1328(a).[4] In addition, under 11 U.S.C. § 523(a)(16), post-petition association assessments are excepted from discharge for petitions under Sections 727 (Chapter 7), 1141 (Chapter 11), 1228(a) and (b) (Chapter 12), and Section 1328(b) (Chapter 13 cases where the debtor is discharged without completing her payments).[5] Notably absent from the list of discharge exceptions in Section 1328(a) is a reference to Section 523(a)(16), the only provision which excepts post-petition association assessments from discharge. *See* n.5 *supra*.

Thus, it appears that Congress' decision not to add post-petition association assessments to the exceptions listed in

---

[4] The exceptions to Section 1328(a) discharge are debts regarding: (1) curing defaults on unsecured claims or secured claims which require payments due after the last payment under the plan is due (under 11 U.S.C. § 1322(b)(5)); (2) required taxes for which the debtor is liable (under 11 U.S.C. § 507(a)(8)(C)); (3) taxes owed under unfiled or late tax returns (under 11 U.S.C. § 523(a)(1)(B)); (4) taxes from fraudulent tax returns or tax evasion (under 11 U.S.C. § 523(a)(1)(C)); (5) valuables obtained by fraud or false pretenses (under 11 U.S.C. § 523(a)(2)); (6) unscheduled debts (under 11 U.S.C. § 523(a)(3)); (7) fraud or defalcation while acting as a fiduciary, embezzlement, or larceny (under 11 U.S.C. § 523(a)(4)); (8) domestic support obligations (under 11 U.S.C. § 523(a)(5)); (9) student loans (under 11 U.S.C. § 523(a)(8)); (10) obligations for personal injuries resulting from a DUI (under 11 U.S.C. § 523(a)(9)); (11) restitution and fines arising from a criminal conviction; and (12) damages awarded in personal injury actions

Section 1328(a) was purposeful. *See Boudette v. Barnette*, 923 F.2d 754, 756–57 (9th Cir. 1991) (describing the rule of statutory interpretation of *expressio unius est exclusio alterius* as creating "a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions"); *see also Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 563 (1990) ("Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all, of § 523(a)'s exceptions to discharge."), *superseded by statute*, Criminal Victims Protection Act of 1990, PL 101-581, § 3, 104 Stat. 2865; *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992) ("In order to effectuate the fresh start policy [of bankruptcy], exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor.").

Sixty-01 cautions against giving undue weight to "Congress' silence" regarding its failure to include post-petition CA assessments as an exception to discharge under Section 1328(a), citing *Foster*. The court in *Foster* wondered whether the failure to include this exception was simply the result of a "statutory misstep." 435 B.R. at 659. We reject this conjecture. This is not a case implicating a drafting error

---

resulting from willful or malicious injury. The parties agree that none of these exceptions are implicated here.

**5** As stated, Congress added this exception to resolve the split between the Fourth and Seventh Circuits in *Rosenfeld*, 23 F.3d 833, and *Rosteck*, 899 F.2d 694 regarding post-petition association assessments in Chapter 7 cases. Congress recognized in the legislative history of Section 523(a)(16) that "[e]xcept to the extent that the debt is nondischargeable under [Section 523(a)], obligations to pay such fees [(post-petition assessments)] would be dischargeable." 140 Cong. Rec. H10752-01, H10770 § 309 (citing *Rosteck*, 899 F.2d 694).

or a Congressional oversight. Rather, it is an instance where Congress confronted an issue of policy, and spoke by creating explicit exceptions to discharge in Section 1328(a) but did not include (as it did for other chapters) post-petition CA assessments. *See Boudette*, 923 F.2d at 756–57.

This very dilemma (whether Congress' exclusion of a discharge exception was an oversight or purposeful) was addressed by the Supreme Court in *Davenport*. In that case, the Court concluded that because Congress had not explicitly included the Chapter 7 discharge exception for fines, penalties and forfeitures (Section 523(a)(7)) in Chapter 13, and given Congress' broad definition of the term "debt," as well as the fact that Chapter 13 afforded a broader discharge than Chapter 7, criminal restitution orders were dischargeable under Chapter 13. *Davenport*, 495 U.S. at 562–64. Congress disagreed with the Court's decision and later overruled it by amending Section 1328(a) to specifically exclude criminal restitution from discharge. *See* PL 101-581, § 3, 104 Stat. 2865; 11 U.S.C. § 1328(a)(3). *Davenport* illustrates the proper interaction between Congress and the courts. As applied here, the Bankruptcy Code does not provide an exception to discharge under Section 1328(a) for post-petition association assessments (including CA assessments). If Congress concludes that such an exception is sound public policy, it may amend the Bankruptcy Code to provide for it as it did in response to *Davenport*.

## D.  The Takings Clause and Notions of Equity

The parties raise two additional arguments that warrant brief discussion.

First, Sixty-01 contends that, because it asserts that the personal obligation to pay CA assessments is a real property

interest stemming from the Declaration, the Fifth Amendment's Takings Clause prohibits the government from discharging the obligation. The Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Sixty-01 argues just that—that the discharge of the post-petition CA assessments would amount to a taking of a substantial property right without just compensation.

This argument fails. In the bankruptcy context, the Supreme Court has distinguished between secured *in rem* debts and unsecured *in personam* debts: *in personam* debts are dischargeable while the creditor retains its *in rem* property interests. *See Johnson v. Home State Bank*, 501 U.S. 78, 82–84 (1991) (concluding that the debtor's *in personam* obligation under a mortgage, but not the *in rem* obligation, was discharged pursuant to a Chapter 7 petition and that, in addition, the remaining *in rem* property interest was a "claim" under the broad definition in the Bankruptcy Code subject to inclusion in a subsequent Chapter 13 reorganization plan); *id.* at 84 n.5 ("[A] discharge under the Code extinguishes the debtor's personal liability on his creditor's claims."); *see also In re Anderson*, 378 B.R. 296, 298 (Bankr. W.D. Wash. 2007) ("A bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property." (quoting *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 92 (4th Cir. 1995))). Because Sixty-01 retains its *in rem* interest (even after the discharge of Goudelock's *in personam* debt), the Takings Cause is not implicated.

Second, both parties raise equitable arguments regarding why post-petition CA assessments should or should not be discharged under certain circumstances. Many of these arguments turn on whether the debtor relinquishes his or her

property or remains in possession of it post-petition. However, there is no legal basis for distinguishing between whether Goudelock retained possession of her condominium unit post-petition and, thus, continued to enjoy the benefit of occupancy at no cost, or, instead, surrendered it at some point. Sixty-01 points out that bankruptcy courts are "essentially courts of equity," *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 57 (1989) (quoting *Katchen v. Landy*, 382 U.S. 323, 327 (1966)), and argues that affording Goudelock what would essentially be "free rent" for four years is inequitable and unjust. However, notions of equity and fairness do not override the express provisions of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). The legislative branch, not the courts, is the appropriate place to balance conflicting policy interests and adjust the Bankruptcy Code accordingly if it is warranted. *See Davenport*, 495 U.S. at 562–63 (recognizing that Congress makes "policy choice[s] regarding the dischargeability" of debts).

## IV.    CONCLUSION

For the foregoing reasons, we reverse the district court's affirmance of the bankruptcy court's grant of summary judgment in favor of Sixty-01 and remand for further proceedings consistent with this disposition.

**REVERSED AND REMANDED.**