[No. B086723. Second Dist., Div. Two. May 14, 1996.]

CATHAY BANK, Plaintiff and Appellant, v.
FIDELITY NATIONAL TITLE INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Frandzel & Share, Leslie Anne Hawes and Thomas M. Robins III for Plaintiff and Appellant.

Case, Knowlson, Mobley, Burnett & Luber, Mark E. Schiffman and Richard D. Simpson, Jr., for Defendant and Respondent.

OPINION

**FUKUTO, J.**—Plaintiff Cathay Bank (bank) appeals from a judgment after court trial, in favor of defendant Fidelity National Title Insurance Company (Fidelity), in an action for damages allegedly caused by Fidelity's recording a release of a deed of trust. We agree with the trial court that Fidelity's act was not the legal cause of the bank's losing its security, and we therefore affirm.

FACTS

The evidence at trial was generally stipulated to and undisputed. In 1990 the bank extended a $100,000 line of credit to one Tong. The note was secured by a recorded deed of trust on two parcels in Rancho Cucamonga, one known as the Port Street property and the other as the Silverspur property. In December 1991, Tong engaged to sell the Port Street property, and opened an escrow with Modern Escrow (Modern). Fidelity served as the title insurer and "sub-escrow."

Modern sent the bank a request for a payoff demand statement, setting forth the amounts necessary to discharge Tong's loan. (Civ. Code, § 2943, subd. (a)(5); section citations hereafter are to that code.) On January 3, 1992, the bank responded to Fidelity, with a payoff demand statement in the amount of $91,539.11 plus interest. A few weeks later, the bank sent Fidelity an amended payoff demand statement in the amount of $30,000 plus interest. As the bank knew, that was not the full balance of the loan.

Upon close of escrow for the Port Street property, the bank received from Fidelity a check for $30,245.16. Fidelity was aware that the deed of trust covered two properties, only one of which was subject to the escrow. The bank prepared a partial reconveyance of the deed of trust, but it remained in the bank's files.

Fidelity employed a tracking service (Title Recon) to monitor recordation of trust deed reconveyances. On February 6, 1992, the bank received a letter from Title Recon, on behalf of Fidelity, stating that Fidelity intended to assure that the deed of trust was cleared from county records. The bank was invited to do so, or to have Fidelity do it, at no cost. The letter added, "You will be notified again ten days prior to the title company releasing this obligation." It concluded: "If you have any questions or if this loan has NOT been paid in full, please contact our customer service representatives." The bank did not respond.

On April 7, 1992, the bank received a notice of "intent to release" from Title Recon, again on Fidelity's behalf. It stated that, under section 2941,

within 10 days Fidelity would be entitled to and might record a "release of obligation under deed of trust," which would be equivalent to a full reconveyance of the deed of trust. The notice recited full payment of the obligation secured by the described deed of trust, and stated: "If a payoff has not occurred against the above Deed of Trust, you must call our customer service department."[1]

The bank again made no response, and on April 17, 1992, Fidelity recorded a "release of obligation under deed of trust." Tong subsequently encumbered the Silverspur property again, and the bank ultimately became aware that its trust deed had been released.

The bank brought this action against Fidelity under section 2941, subdivision (b)(6), which provides that "In addition to any other remedy provided by law, a title insurance company preparing or recording the release of the obligation shall be liable to any party for damages, including attorneys' fees, which any person may sustain by reason of the issuance and recording of the release . . . ." The bank sought damages of $36,835, the stipulated amount of equity in the Silverspur property to which the bank would have had access under the deed of trust. The bank also sued Tong, for the balance due on its loan, which exceeded $36,835. (Tong is not a party to this appeal.)

The court gave judgment for Fidelity because, as Fidelity had contended, its recordation of the trust deed release had not been the legal cause of the bank's losing that security interest in the Silverspur property. Rather, the bank's rendition of an understated payoff demand statement, followed by Fidelity's responsive payment, had extinguished the security, several months before Fidelity recorded the release. This result obtained by virtue of section 2943, subdivision (d)(3), which provides that upon close of escrow (or other specified events), ". . . any sums that were due and for any reason not included in the [payoff demand] statement or amended statement shall continue to be recoverable by the [trust deed] beneficiary as an *unsecured* obligation of the obligor . . . ." (Italics added.) The court therefore concluded: "The plaintiff, bank, is unable to prove by a preponderance of the evidence, that it's [*sic*] damages were sustained 'by reason of the issuance and recording of the release.' "

In dictum, the court's statement of decision also "comment[ed] on" another line of defense Fidelity had asserted, namely comparative fault. It

---

[1]Section 2941, subdivision (b), provides that when an obligation secured by a deed of trust has been satisfied, the beneficiary shall deliver a reconveyance, which the trustee shall record. If a full reconveyance has not been recorded within 75 days of satisfaction, a title insurer may record a release of the obligation, after first giving at least 10 days' notice to the parties as prescribed. (§ 2941, subd. (b)(3).) When recorded, that release "shall be deemed to be the equivalent of a reconveyance of [the] deed of trust." (§ 2941, subd. (b)(3)(B).)

was undisputed that section 2941, subdivision (b)(6) imposes strict liability. However, the court agreed with Fidelity that, by analogy to strict products liability, assessment of damages under the statute was governed by comparative fault. The court further opined that the bank had been 90 percent at fault in causing the release of the deed of trust.

## DISCUSSION

On appeal, the bank disputes both the court's primary decision—that Fidelity's conduct was not the cause of the bank's losing the security of the deed of trust—and its further determinations about the applicability and allocation of comparative fault. Because we agree with the court's principal, dispositive holding, we need not address the comparative fault issues.

The trial court's decision was based on the operation and effect of section 2943. Under subdivision (c), a trust deed beneficiary must deliver a payoff demand statement to an "entitled person" upon demand. Entitled persons include the trustor (obligor), holders of subordinate liens, and authorized escrow holders. (§ 2943, subd. (a)(4).) In this case, the bank furnished such a statement at the request of the escrow holder, Modern, to the latter's agent and sub-escrow, Fidelity. The statement showed $30,000 plus interest as the amount necessary to satisfy the obligation secured by the bank's loan and deed of trust.

Subdivision (d)(1) of section 2943 provides that such a payoff demand statement "may be relied upon by the entitled person or his or her authorized agent in accordance with its terms, including with respect to the payoff demand statement reliance for the purpose of establishing the amount necessary to pay the obligation in full." Upon close of escrow, Fidelity paid the bank $30,000 plus interest, according to the terms of the statement.

As previously noted, section 2943, subdivision (d)(3) proceeds to provide that, upon dates specified therein, "any sums that were due and for any reason not included in the statement or amended statement shall continue to be recoverable by the beneficiary as an unsecured obligation of the obligor pursuant to the terms of the note and existing provisions of law." In the case of a voluntary transaction, the effective date is "the earlier of (i) the close of escrow, (ii) transfer of title, or (iii) recordation of a lien"; at that point ". . . the entitled party or his or her authorized agent may rely upon the statement or amended statement." (§ 2943, subd. (d)(3)(A).)

The meaning and effect of these prescriptions are that, upon close of escrow and Fidelity's payment of the bank's payoff demand, Tong remained personally liable for the balance of his loan which the bank had understated, but "the remaining debt [was] no longer secured according to the terms of the original note regardless of the circumstances." (*Freedom Financial Thrift & Loan* v. *Golden Pacific Bank* (1993) 20 Cal.App.4th 1305, 1315 [25 Cal.Rptr.2d 235].) Stated otherwise, "If the beneficiary makes an error in the Statement, any amounts which may be due which are not included in the Statement are not secured by the deed of trust or mortgage after the entitled person has changed his position in reliance on the Statement . . . ." (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:58, p. 165.) Accordingly, as the trial court found, the bank's deed of trust security was superseded well before Fidelity's recording of the trust deed release, on which liability was sought to be based.

To avoid this consequence, the bank asks that we "interpret" section 2943, subdivision (d)(3)'s mandate, that amounts of indebtedness not included in a payoff demand statement become an unsecured obligation, as applying only to the real property security involved in the escrow or other transaction in connection with which the payoff demand statement has been obtained. The bank reasons that the Legislature could not have intended the subdivision to affect the beneficiary's security interest in any other property, and that limiting the statute to the property being disposed of (here, the Port Street property) would fully protect the "entitled parties" to the transaction, as intended.

The requested construction exceeds our reach. The bank would have us ignore what it concedes is "the literal meaning of the words of the statute," and instead substantially revise and amend them, to mean something different from and less than they say.  ■  But a court, charged with interpreting a statute to effectuate legislative intent, cannot enlarge the plain terms of the statute in pursuit of that underlying policy. (*Moallem* v. *Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1833 [31 Cal.Rptr.2d 253].)  ■  Moreover, the bank's argument perceives the intent of section 2943, subdivision (d) too narrowly. The 1988 amendments that added that subdivision apparently were intended to " ' "shift the responsibility for calculating the amount to satisfy the loan from the borrowers [trustor or mortgagor] to [the] creditor [mortgagee or beneficiary]." ' " (*Freedom Financial Thrift & Loan* v. *Golden Pacific Bank, supra,* 20 Cal.App.4th at p. 1315, fn. 3.) The Legislature chose specific means and consequences to effect that shift. Reconsidering those methods for the situation presented here (an erroneous

full payment demand upon the sale of one of several properties subject to a single deed of trust) is once more a legislative function.

The judgment is affirmed.

Boren, P. J., and Zebrowski, J., concurred.

A petition for a rehearing was denied June 6, 1996.