

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-18-1260-STaB |
| CAROLYN L. BURKE, | Bk. No. 1:09-bk-12469 |
| Debtor. | Adv. No. 1:17-ap-1035 |
| UMPQUA BANK, | |
| Appellant, | **MEMORANDUM**\* |
| v. | |
| CAROLYN L. BURKE, | |
| Appellee. | |

Argued and Submitted on June 20, 2019
at Sacramento, California

Filed – November 25, 2019

Appeal from the United States Bankruptcy Court
for the Northern District of California

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

Appearances:    George C. Lazar of Fox Johns Lazar Pekin & Wexler APC
                argued for Appellant.[**]

Before: SPRAKER, TAYLOR, and BRAND, Bankruptcy Judges.

Memorandum by Judge Taylor

Dissent by Judge Spraker

## INTRODUCTION

In 2009, Carolyn L. Burke received a chapter 7[1] discharge and left bankruptcy unencumbered by personal liability under a guaranty payable to Umpqua Bank. But Umpqua's guaranty-claim was secured by a lien against her home, this lien survived discharge, and Umpqua had the right to recover payment on the guaranty from the post-petition sale of its collateral.

So, Ms. Burke emerged from bankruptcy in a new relationship with Umpqua, the housing crisis that confronted Ms. Burke and so many others in 2009 abated, California real estate generally recovered value, and we hope that Ms. Burke benefitted appropriately from the fresh start promised

---

[**] Appellee Burke did not actively participate in this appeal.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

by bankruptcy discharge.

Eight years passed.

In 2017, Ms. Burke sold her home. But, as a result of error, Umpqua submitted a demand into escrow that was approximately $250,000 too low. Thus, when the sale closed, Umpqua got a small payment, and Ms. Burke received a substantially enhanced payment—at Umpqua's expense.

Because the demand bound Umpqua as a matter of California law, Umpqua's trust deed was reconveyed. And because of her bankruptcy discharge, it cannot sue Ms. Burke on the guaranty. Umpqua is left with a singular and merely potential remedy: an unjust enrichment claim under California law. We are not required to determine the ultimate question of whether unjust enrichment exists under these facts; the only question we must answer is whether Ms. Burke's 2009 bankruptcy discharge bars Umpqua from bringing an unjust enrichment action. The bankruptcy court concluded that the discharge creates such a bar; on *de novo* review we conclude that it does not.

Accordingly, we REVERSE.

## FACTS

The facts relevant to this appeal are few and undisputed. In 2007, Umpqua loaned $194,000.00 to AWS, LLC. Ms. Burke guaranteed repayment and secured her obligations under the guaranty through a deed of trust against her residence in Sonoma, California (the "Home").

3

In 2009, Ms. Burke filed a chapter 7 bankruptcy petition. Her bankruptcy schedules reflected that the Home was over encumbered and that Umpqua held a third priority lien. She received her discharge in late 2009.

In 2017, Ms. Burke sold the Home. After payment of senior liens, approximately $351,000 remained available to pay Umpqua's approximately $231,000 claim. But Umpqua, through alleged clerical error, submitted a demand into escrow of only $3,061.23. Before it discovered or was able to correct the demand, escrow relied on it, completed the transaction, and reconveyed Umpqua's trust deed. Ms. Burke, thus, received $348,874.80 in sale proceeds.

Umpqua promptly obtained an order reopening Ms. Burke's bankruptcy case and filed an adversary complaint seeking a declaratory judgment that the filing of an unjust enrichment action in state court would not violate Ms. Burke's chapter 7 discharge. It then moved for summary judgment; Ms. Burke did not actively oppose or appear for either of the summary judgment hearings.

At the first hearing, the bankruptcy court orally denied the motion, stated an intent to sua sponte grant summary judgment in Ms. Burke's favor, but allowed Umpqua to file supplemental briefing. At the second hearing, the bankruptcy court relied on the undisputed facts and concluded that Umpqua's prepetition claim "encompassed" both its

secured claim against the Home as well as any contingent unjust enrichment claim. It, therefore, concluded that Ms. Burke's discharge prohibited Umpqua from seeking to collect personally against her on an unjust enrichment theory.

The bankruptcy court entered judgment in Ms. Burke's favor, and Umpqua timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it determined that the discharge prevented Umpqua from filing a state court unjust enrichment action against Ms. Burke?

## STANDARD OF REVIEW

We review the bankruptcy court's grant or denial of summary judgment *de novo*. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). We also review the interpretation of state and federal law *de novo*. *Cmty. Bank of Ariz. v. G.V.M. Tr.*, 366 F.3d 982, 984 (9th Cir. 2004); *Collect Access LLC v. Hernandez (In re Hernandez)*, 483 B.R. 713, 719 (9th Cir. BAP 2012). Under *de novo* review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (applied in adversary proceedings by Rule 7056). Here there are no factual disputes, and we, thus, apply the law to these undisputed facts.

On *de novo* review, we must determine the existence and nature of Umpqua's unjust enrichment claim; we do so under nonbankruptcy law. *See Butner v. United States*, 440 U.S. 48, 54–55 (1979); *Bechtold v. Gillespie (In re Gillespie)*, 516 B.R. 586, 591 (9th Cir. BAP 2014). Then, we must determine when the claim arose and whether it was discharged in 2009. Bankruptcy law answers these questions.

### A. The Bankruptcy Code broadly defines "claim" and may allow for discharge of litigation claims even if not yet ripe for adjudication.

Bankruptcy proceedings are intended to give debtors a "fresh start." *Goudelock v. Sixty-01 Ass'n of Apartment Owners*, 895 F.3d 633, 637 (9th Cir. 2018) (citing *Grogan v. Garner*, 498 U.S. 279, 286 (1991)); *Dept. of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 928 (9th Cir. 1993). And this is principally achieved by the bankruptcy discharge, which frees an individual debtor from personal liability for most claims arising prepetition. *See* 11 U.S.C. § 727(b); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (citing 11 U.S.C. § 524(a)(1)). It also enjoins creditors from

commencing or continuing an action to collect on a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2).

The Code defines a debt as "liability on a claim." 11 U.S.C. § 101(12). The definition of claim includes a: "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The term also broadly includes a "right to an equitable remedy for breach of performance." 11 U.S.C. § 101(5)(B).

This definition, thus, encompasses a debtor's prepetition obligations no matter how remote or contingent. *Goudelock*, 895 F.3d at 638 (citing *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 838 (9th Cir. 2009)). Indeed, a claim may exist for bankruptcy and discharge purposes long before a cause of action accrues under nonbankruptcy law. *In re SNTL Corp.*, 571 F.3d at 839 (citing *Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1007 (9th Cir. 2000)). It is only necessary that the creditor be able to fairly or reasonably contemplate the claim's existence as of the petition date. *In re SNTL Corp.*, 571 F.3d at 839.

B. **Umpqua's guaranty claim was discharged, it retained an *in rem* claim that survived discharge and allowed recovery from proceeds of the Home, but its erroneous demand into escrow extinguished its ability to obtain recovery on account of its *in rem* rights.**

Ms. Burke's discharge freed her from any personal liability arising

under the guaranty. *See Johnson*, 501 U.S. at 82–83 (citing 11 U.S.C. § 524(a)(1)). But Umpqua retained an *in rem* claim based on the deed of trust, and its right to pursue collection against the Home passed through the bankruptcy unaffected by the discharge. *Id.* at 83.

Many years postdischarge, when Ms. Burke sold the Home, Umpqua had the opportunity (and right) to collect on its *in rem* claim. California Civil Code § 2943 governed the process, and Umpqua, thus, responded to the escrow company's written request for a payoff demand. Cal. Civ. Code § 2943(c); *Cathay Bank v. Fidelity Nat. Title Ins. Co.*, 46 Cal. App. 4th 266, 270 (1996).

But its demand erroneously said it was only owed $3,061.23, and, under California law, the escrow company was entitled to rely on it. Cal. Civ. Code § 2943(d)(1). As such, the erroneous payoff demand statement established "the amount necessary to pay the obligation in full." *Id.*; *see also Cal. Nat. Bank v. Havis*, 120 Cal. App. 4th 1122, 1134 (2004). Upon payment of this amount and the close of escrow, Umpqua's rights and interests under the deed of trust were automatically extinguished as a matter of law. *See* Cal. Civ. Code § 2943(d)(1).

California law provides a creditor with a statutory remedy for an error in a beneficiary's demand. Under California Civil Code § 2943(d)(3), the beneficiary may recover debt not included in its beneficiary's demand "as an unsecured obligation of the obligor pursuant to the terms of the"

8

document creating the debt. Cal. Civ. Code § 2943(d)(3). For the dissent, this is conclusive. It reads Umpqua's cause of action as one on the guaranty and governed by California Civil Code § 2943(d)(3). Umpqua, however, acknowledges that it cannot pursue Ms. Burke under either the guaranty, its trust deed, or California Civil Code § 2943(d)(3); it does not seek to file a collection action. At oral argument it confirmed that it will rely exclusively on a common law unjust enrichment theory.

### C. A California unjust enrichment claim does not arise under a contract; it is a common law cause of action.

Under current California law, the unjust enrichment claim that Umpqua seeks to assert is a standalone cause of action untethered from its contractual relationship with Ms. Burke. In *Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996), the California Supreme Court considered facts remarkably similar to those in this appeal: the seller of real property, through a mistake of fact, understated the amount necessary to payoff a purchase money deed of trust and subsequently sued the purchaser to recover the remaining amount. *Id.* at 43. The court determined that the seller was barred from obtaining a deficiency under its note and trust deed by California's antideficiency statute and that California Civil Code § 2943(d)(3) was not applicable to this claim. *Id.* at 47. But it allowed recovery under a theory of unjust enrichment. *Id.* at 43–44. More recently, in *Hartford Casualty Insurance Company v. J.R. Marketing, L.L.C.*, 61 Cal. 4th 988 (2015), it again

allowed an independent claim for unjust enrichment to proceed. *Id.* at 996–97. The Ninth Circuit expressly noted that *Hartford* clarified California law and established that an unjust enrichment claim can be sustained as a standalone cause of action. *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017).

The California Supreme Court in *Hartford* described unjust enrichment as follows: "An individual who has been unjustly enriched at the expense of another may be required to make restitution. Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty." *Hartford Cas. Ins. Co.*, 61 Cal. 4th at 326 (citations omitted). It continued: "Restitution is not mandated merely because one person has realized a gain at another's expense. Rather, the obligation arises when the enrichment obtained lacks any adequate legal basis and thus cannot conscientiously be retained." *Id.* (citations and internal quotation marks omitted). And in *Ghirardo*, the California Supreme Court discussed unjust enrichment through the lens of the equitable remedy of restitution:

> Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. (Rest., Restitution, § 1, p. 12.) A person is enriched if he receives a benefit at another's expense. (*Id.*, com. a, p. 12.) The term "benefit" "denotes any form of advantage." (*Id.*, com. b, p. 12.) Thus, a benefit is conferred not only when one adds to the property of another, but also when one saves the other from

10

expense or loss. Even when a person has received a benefit from another, he is required to make restitution "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." (*Id.,* com c, p. 13.)

*Ghirardo*, 14 Cal. 4th at 51.

So, an unjust enrichment cause of action is not based on, nor does it require, a contractual relationship or a written contract. *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th 333, 346 (2008). In *Hartford*, the California Supreme Court emphasized this point: "Though this restitutionary obligation is often described as quasi-contractual, a privity of relationship between the parties is not necessarily required." *Hartford Cas. Ins. Co.*, 61 Cal. 4th at 326. Instead, "unjust enrichment is a common law obligation implied by law based on the equities of a particular case and not on any contractual obligation." *Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal. App. 4th at 346. Consistent with the view that unjust enrichment is not an action on a contract or in quasi-contract is the fact that California recognizes a three year statute of limitations for unjust enrichment claims rather than the four year statute applicable to claims for breach of contract. *See id.*

This is where we part ways with the dissent. On its view, Umpqua's claim for unjust enrichment is merely an equitable remedy based on or a cause of action arising from the guaranty. We disagree. As a result of the guaranty and the trust deed, Ms. Burke was in a financial relationship with

11

Umpqua. After discharge, this relationship was modified such that her liability was limited to equity available from proceeds of the Home. But the obligation that Umpqua seeks to vindicate is one arising from the common law: a party must deal fairly with another and may have liability where it unjustly recovers an economic benefit to the detriment of another. In vindicating this right, the guaranty and trust deed are relevant to the calculation of damages, in particular, but the claim does not arise thereunder. In short, California law expressly provides for an unjust enrichment cause of action for mistaken distribution of proceeds and untethers it from any related contract.[2]

**D. Umpqua's unjust enrichment claim arose postpetition because it was not fairly contemplated on a prepetition basis.**

While state law governs the existence and nature of Umpqua's claim, *Butner*, 440 U.S. at 54–55, federal bankruptcy law governs when that claim arose for discharge purposes. *Goudelock*, 895 F.3d at 638. The Ninth Circuit applies the "fair contemplation test" to answer that question. *Id.* Under this

---

[2] The dissent assumes that the enactment of California Civil Code § 2943(d)(3) displaced the common law's unjust enrichment cause of action. But it cites no California authority for this proposition—neither *Ghirardo* nor *Cathay Bank* so state. Nor does it engage the analysis required, under California law, to make this determination. *See I.E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 285 (1985) ("The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to 'occupy the field.' "). As already noted, Umpqua expressly disclaimed reliance on California Civil Code § 2943(d)(3). We see no reason to engage this broader question of California law.

test, " 'a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law.' " *Id.* (quoting *In re SNTL Corp.*, 571 F.3d at 839).

We conclude that Umpqua's unjust enrichment arose in 2017; as a result, it is not a prepetition claim affected by the discharge.

The Ninth Circuit has a well-developed complement of cases discussing the fair contemplation test. Most involve situations where a creditor knew prepetition about specific facts that reasonably suggested a claim. *See Goudelock*, 895 F.3d 633 (a debtor's *in personam* obligation to pay monthly condominium assessments arose at prepetition purchase, and, thus, the condominium association could have fairly contemplated that monthly assessments would continue to accrue based on debtor's continued ownership); *Picerne Constr. Corp. v. Castellino Villas, A.K.F. LLC (In re Castiellino Villas, A.K.F. LLC)*, 836 F.3d 1028 (9th Cir. 2016) (plaintiff in an action under a prepetition contract with an attorneys' fees provision could, given a preconfirmation settlement agreement that required resumption and completion of the lawsuit, fairly contemplate that it would thereafter incur attorneys' fees obligations); *In re SNTL Corp.*, 571 F.3d 826 (the parties fairly contemplated the existence of a potential claim because they provided for it in a prepetition contract); *In re Cool Fuel, Inc.*, 210 F.3d 999 (where the California taxing authority investigated the debtor and issued a deficiency determination prepetition, its bankruptcy proof of claim

13

was ripe as an allowable contingent claim and was fairly contemplated even though a final decision had not issued on debtor's prepetition request for redetermination); *In re Jensen*, 995 F.2d 925 (where state inspector discovered an environmental hazard on the debtor's property prepetition, the state's claim was discharged even though a CERCLA cause of action requiring clean up had not yet accrued).

*ZiLOG Mod III, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996 (9th Cir. 2006), involved application of the fair contemplation test from a slightly different angle. In that case, the Ninth Circuit, among other things, reversed a summary judgment determining that employee discrimination claims were discharged. *Id.* at 1010. The discriminatory acts occurred both pre and postpetition. *Id.* at 997–98. But the employees asserting the claim alleged that they did not learn about the discrimination until after the petition and bar dates. *Id.* The Ninth Circuit concluded that summary judgment was improper because there was a factual dispute about whether the employees' claims were in their fair contemplation before chapter 11 plan confirmation. *Id.* at 1001–02.

As a corollary to the fair contemplation test cases, the Ninth Circuit also allows a creditor to recover contractual attorneys' fees under a prepetition contract when the debtor "returns to the fray". In *Siegel v. Federal Home Loan Mortgage Corporation (In re Siegel)*, 143 F.3d 525 (9th Cir. 1998), the debtor defaulted prepetition on two real estate loans, filed a

chapter 7 petition, and obtained a discharge. *Id.* at 527–28. Unwisely, he then continued to litigate claims against the lender; the Ninth Circuit affirmed the lower court's award of attorneys' fees following the lender's victory. *Id.* at 534. As the Ninth Circuit reasoned, when the debtor voluntarily undertook a new course of litigation and "returned to the fray," any new liability for attorneys' fees was a collectible post-discharge cost. *Id.* at 533.

Similarly, in *Boeing North American, Inc. v. Ybarra (In re Ybarra)*, 434 F.3d 1018 (9th Cir. 2005), the debtor sued her employer in state court and then filed bankruptcy. *Id.* at 1020. After the chapter 7 trustee settled the lawsuit and received bankruptcy court approval of the settlement over the debtor's objection, the state court dismissed the suit. *Id.* The debtor then amended her schedules to exempt the lawsuit and, on appeal, the Ninth Circuit allowed the amendment. *Id.* So, the bankruptcy court eventually allowed the debtor to either accept a settlement payment or to maintain the suit; the debtor chose to litigate. *Id.* She then convinced the state court to set aside the dismissal, but her employer thereafter obtained summary judgment and an award of its attorneys' fees. *Id.* at 1020–21. The bankruptcy court subsequently determined that the postpetition attorneys' fees were not discharged. *Id.* at 1021. On appeal, the Ninth Circuit affirmed and again emphasized that a claim for postpetition attorney's fees and costs was not discharged when the debtor voluntarily initiates litigation or

returns to the fray. *Id.* at 1026.

We acknowledge that the return to the fray doctrine is not directly applicable here; this case does not involve litigation claims. We note these cases, however, because in *Picerne,* the Ninth Circuit said that the *return to the fray* analysis falls within the *fair contemplation* test. Put simply, because we expect debtors to use the discharge as a shield and not as a sword, a creditor does not fairly contemplate that a debtor will return to the fray. The return to the fray cases, thus, simply provide additional examples of areas where a postpetition claim is not in a creditor's fair contemplation and, therefore, is not discharged.

The present facts are most analogous to *ZiLOG*. Umpqua had no knowledge of Ms. Burke's alleged unjust enrichment prepetition or even pre-discharge. The acts that gave rise to a potential claim for unjust enrichment arose 8 years thereafter. And, thus, Umpqua had no ability to protect itself in Ms. Burke's bankruptcy case. In *ZiLOG,* the employees were unable to file protective proofs of claim. Analogously, Umpqua was unable to file the nondischargeability action that might well have been available under § 523(a)(6) if the unjust enrichment claim arose prepetition. Under *ZiLOG,* Umpqua's unjust enrichment claim is not discharged. And unlike the other fair contemplation cases, nothing known to Umpqua put it on notice of its 2017 claim for unjust enrichment; it was not reasonably contemplated prepetition. It did not have knowledge of a fact, such as the

environmental hazard in *Jensen* or the tax deficiency determination in *Cool Fuel, Inc.* And it did not enter into a contract that provided for recovery in the circumstance it now encounters as was the case in *SNTL Corporation*, *Picerne*, and *Goudelock.*[3]

As for the "return to the fray" cases, to the extent they fit within the broader "fair contemplation" test, they stand for the proposition that where a debtor creates a right to recovery through new postpetition conduct, she cannot hide behind the discharge. This is a common sense proposition.

To be clear, we agree that it is within the realm of *possibility* that a debtor will act unjustly in connection with collateral proceeds postpetition and post-discharge. Indeed, the facts of this case are theoretically possible in every real estate secured transaction. But the mere possibility that a debtor could act nefariously does not bring all acts of actual misconduct within the realm of *fair contemplation* under the Ninth Circuit standard. No one could have reasonably anticipated that Ms. Burke would receive collateral proceeds to which Umpqua was entitled post-discharge and then, allegedly, unjustly retain them. Creditors like Umpqua need not and should not be deemed to contemplate all future bad acts especially where

---

[3] The dissent reasons that *Goudelock* is the most analogous case. If we accepted the dissent's underlying premise—that Umpqua's alleged unjust enrichment cause of action is actually a *remedy* for enforcement of a *prepetition* contractual claim—we would agree. Instead, we view the cause of action as untethered from the prepetition contract and as arising out of postpetition acts.

they have no ability to protect themselves through a nondischargeability action or otherwise. The Ninth Circuit has never so expanded the fair contemplation test.[4]

## CONCLUSION

Eight years postdischarge Ms. Burke received and kept collateral proceeds; Umpqua alleges that she did so unjustly. We determine that Umpqua's unjust enrichment cause of action arose at that time and was not fairly contemplated either prepetition or predischarge. We acknowledge that it is tempting to leave a well-heeled financial institution to the consequences of its error. But the result suggested by the dissent would similarly apply in a situation where the debtor is the well-heeled and sophisticated party and the unpaid creditor is elderly, impoverished, and left a critical zero off her demand due to bad eyesight. The bankruptcy discharge does not convert a debtor's future into one where the debtor is insulated from the consequences of entirely postpetition conduct that the

---

[4] And how far can one take the dissent's reasoning? Did the bankruptcy discharge insulate Ms. Burke from a claim of conversion or fraud if she stole sale proceeds, falsified a reconveyance, or engaged in other types of postpetition fraudulent activity? Did it shield her if she laid waste to the Home and substantially decreased its value to Umpqua's detriment? The answer is no. No one would suggest that such tortious activity was fairly contemplated before the discharge. No one can say that her allegedly unjust retention of escrow proceeds was within Umpqua's fair contemplation either. And while the bankruptcy system assumes a fresh start (the discharge as a shield), the discharge should not be used as a sword that clears a pathway to nefarious conduct.

state of California (and the common law universally) categorizes as unjust.

In sum, we decline to take any position on the merits of the dispute; we determine only that Ms. Burke's 2009 discharge did not bar Umpqua from pursuing a claim that is based on 2017 facts and arose at that time.

Accordingly, we REVERSE the bankruptcy court's summary judgment in favor of Burke and REMAND for entry of summary judgment in Umpqua's favor.

Dissent begins on next page.

SPRAKER, Bankruptcy Judge, dissenting.

Umpqua Bank seeks leave to sue a discharged debtor to recover monies based upon a prepetition loan guaranty. There is no dispute that Burke's personal liability under the guaranty was discharged as a result of her bankruptcy. Umpqua held a deed of trust against Burke's real property that passed through her bankruptcy. But Umpqua acknowledges that under California law its deed of trust terminated upon payment of the amount Umpqua stated was due on the sale of the property. Unfortunately, Umpqua significantly understated the balance owed. Cognizant of Burke's discharge, Umpqua asked the bankruptcy court for leave to sue her personally for unjust enrichment to recover the remaining balance owed under the guaranty. The bankruptcy court held that an action to collect the remaining balance was barred by the discharge injunction.

The majority now holds that this was error, relying on the postpetition accrual of the unjust enrichment cause of action. The majority also concludes that Umpqua's misstatement of its balance and Burke's resulting retention of the sale proceeds was not within Umpqua's fair contemplation prepetition. I dissent because I agree with the bankruptcy court that Umpqua simply seeks to use a new cause of action to recover a prepetition liability personally from a discharged debtor.

A.    **The Discharge and Umpqua's Claim.**

Burke received a windfall when Umpqua understated the balance

1

owed and the escrow agent paid to Burke roughly $250,000 more than she would have received if Umpqua had correctly stated the amount it was owed. That said, there is no windfall exception to a debtor's discharge. If Umpqua seeks to collect from Burke personally on a dischargeable debt that arose prepetition, it is enjoined from doing so under §§ 727(b) and 524(a)(1). The Code broadly defines a debt as a claim, and a claim includes "all of a debtor's obligations 'no matter how remote or contingent.'" *Goudelock v. Sixty-01 Ass'n of Apartment Owners*, 895 F.3d 633, 638 (9th Cir. 2018) (quoting *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 838 (9th Cir. 2009)). A claim, therefore, includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). Significantly, a claim also includes any equitable remedy giving rise to payment, regardless of whether that remedy is contingent or matured as well. § 101(5)(B). This is exactly what Umpqua's claim for unjust enrichment is in this instance - an equitable remedy designed to enable it to collect the balance of its loan from the debtor personally as it no longer holds any collateral.

As the Ninth Circuit has observed, "[t]he breadth of the definition of 'claim' is critical in effectuating the bankruptcy code's policy of giving the debtor a 'fresh start.'" *Picerne Constr. Corp. v. Castellino Villas, A. K. F. LLC (In re Castellino Villas, A.K.F. LLC)*, 836 F.2d 1028, 1033 (9th Cir. 2016);

*Bechtold v. Gillespie (In re Gillespie)*, 516 B.R. 586, 591 (9th Cir. BAP 2014). The importance of the debtor's fresh start in interpreting the Bankruptcy Code cannot be gainsaid. The Ninth Circuit has acknowledged the importance of the fresh start in the process of protecting the scope of the discharge. *See, e.g., Scheer v. State Bar (In re Scheer)*, 819 F.3d 1206, 1209 (9th Cir. 2016); *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.1992); *see also Sachan v. Huh (In re Huh)*, 506 B.R. 257, 263 (9th Cir. BAP 2014) (en banc). Hence, clear application of the discharge is a paramount concern.

Burke has received her bankruptcy discharge. As a result, she is discharged from her personal liability on the prepetition loan guaranty to Umpqua. It is equally clear that her bankruptcy did not affect Umpqua's deed of trust against her property securing the guaranty. *HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 490 (9th Cir. 2015) ("Congress codified the principle that liens may pass through bankruptcy in § 506(d)(2)."). However, California law terminated Umpqua's deed of trust when the escrow agent paid Umpqua's understated loan balance.

Cal. Civ. Code § 2943(d)(1) establishes that a closing agent for the sale of real property is entitled to rely on the creditor's payoff demand statement "for the purpose of establishing the amount necessary to pay the obligation in full." Subsection (d)(3) anticipates that additional monies beyond the quoted payoff statement may come due prior to payment. Regardless of the reason for any such deficiency, the statute provides that

"any sums that were due and for any reason not included in the statement or amended statement shall continue to be recoverable by the beneficiary as an **unsecured obligation of the obligor pursuant to the terms of the note** and existing provisions of law." Cal. Civ. Code § 2943(d)(3) (emphasis added).

Payment of the payoff demand, therefore, automatically and forever extinguished Umpqua's rights in the collateral. *Cathay Bank v. Fid. Nat. Title Ins. Co.*, 46 Cal. App. 4th 266, 271 (1996). As stated in *Cathay Bank*, the plain language of the statute makes clear that any remaining debt no longer was secured:

> The meaning and effect of these prescriptions is that, upon close of escrow and Fidelity's payment of the bank's payoff demand, Tong remained **personally liable for the balance of his loan** which the bank had understated, but the remaining debt [was] no longer secured according to the terms of the original note regardless of the circumstances.

*Cathay Bank*, 46 Cal. App. 4th at 271 (citations and internal quotation marks omitted and emphasis added). *Cathay Bank* further explained that this interpretation of the statute was consistent with its legislative purpose, which was to "'shift the responsibility for calculating the amount to satisfy the loan from the borrowers . . . to [the] creditor.'" *Id.* (citing *Freedom Fin. Thrift & Loan v. Golden Pac. Bank*, 20 Cal. App. 4th 1305, 1315 n.3 (1993)).

As a consequence, Umpqua retained no interest in the real property sold, or the sale proceeds, once it was paid the understated balance. This is

4

critical to understanding the nature of any resulting unjust enrichment claim; Umpqua cannot argue that Burke received its collateral because Umpqua had no security interest in the sale proceeds once it was paid what it said it was owed.

**B.      California Recognizes A Cause of Action For Unjust Enrichment For The Mistaken Underpayment Of A Secured Debt.**

Although Cal. Civ. Code § 2943(d)(3) extinguished Umpqua's security interest in the real property and the proceeds of the sale, the statute did not extinguish the underlying personal liability for the preexisting obligation. To the contrary, the statute specifically provides that any outstanding balance remained "recoverable by the beneficiary as an unsecured obligation of the obligor pursuant to the terms of the note and existing provisions of law." Cal. Civ. Code § 2943(d)(3). This subsection codified the longstanding rule from the common law of restitution providing equitable relief for certain preexisting contractual obligations that otherwise became uncollectible. The Restatement (Third) of Restitution and Unjust Enrichment (2011) ("Restatement") even has a section devoted to this type of loss entitled: "Mistaken Discharge of Obligation or Lien." Restatement § 8.

The traditional form of relief in this context was "a claim in restitution by reinstatement of the rights mistakenly surrendered." *Id.* As the Restatement elaborated:

> Mistaken discharge of an obligation or a security interest is most simply remedied by treating the discharge as ineffective. The remedy is occasionally described by saying that the act of discharge is cancelled; or that the claimant is subrogated to the obligation or security that has been mistakenly discharged. The significance of such language is essentially that **restitution revives the former obligation instead of creating a new one**.

Restatement § 8, cmt. b (emphasis added). Thus, the common law restitutionary right of a secured lender who mistakenly releases collateral necessarily is tied to the debtor's nonpayment of preexisting debt. California followed the traditional common law rule identified in the restatement: "'in the event a beneficiary was entitled to recover despite a mistake in the payoff transaction, the mortgage or deed of trust could be reinstated and the debt remain secured.'" *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996) (quoting *Freedom Fin. Thrift & Loan*, 20 Cal. App.4th at 1314).[1]

Enactment of Cal. Civ. Code § 2943(d) altered the common law restitutionary remedy. Considering the statute shortly after it was enacted, the Supreme Court of California observed that "[p]rinciples of unjust enrichment, more recently codified in Civil Code section 2943, permit a seller to seek recovery of sums omitted from a payoff statement as an unsecured obligation." *Ghirardo*, 14 Cal.4th at 43. In *Ghirardo*, the Court

---

[1] *Ghirardo* partially disapproved *Freedom Financial Thrift & Loan* on other grounds. *See Ghirardo*, 14 Cal. 4th at 53 n.5. But *Ghirardo* heavily relied on *Freedom Financial Thrift & Loan* for the history, nature, and scope of a secured lender's common law rights upon the mistaken release of its collateral prior to the enactment of Cal. Civ. Code § 2943.

considered the purchaser's argument that Cal. Civ. Proc. Code § 580b, part of California's antideficiency laws, precluded any further action to recover the unpaid balance. It rejected this argument, concluding that "[n]either the wording nor the underlying purpose of Code of Civil Procedure section 580b dictates such a draconian result in the case of a mistake of fact in a payoff demand." *Id*. at 52. *Ghirardo* explained:

> "[A]llowing recovery for unjust enrichment would not contradict the policy of requiring the creditor to rely upon the property to secure the debt. This is because any unjust enrichment recovery could not exceed the property value. Thus, if the property value had decreased, and was less than the debt, a plaintiff's unjust enrichment recovery would be limited by the value of the property."

*Ghirardo*, 14 Cal.4th at 53 (quoting *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1664-65 (1992)).

In sum, California has concluded as a matter of public policy that its antideficiency statutes do not bar a lender from recovering the outstanding balance owed on a loan where the lender misstates the payoff amount. Nonetheless, California recognizes that this liability is based on the underlying debt and is limited by the value of collateral being disposed. Accordingly, *Ghirardo* further explained that Cal. Civ. Code § 2943 subsumed "'the common law concepts of unjust enrichment, mistake and estoppel and provide[d] a debtor may not receive a windfall and **escape the obligation of satisfying a loan in full** when a mortgage or deed of

7

trust is retired in error.'" *Id.* at 51 (quoting *Freedom Financial Thrift & Loan*, 20 Cal. App. 4th at 1315) (emphasis added); *see also Cal. Nat. Bank v. Havis*, 120 Cal. App. 4th 1122, 1134 (2004) ("The statute permits the borrower to rely on that payoff demand statement . . . , and that if the amount in the payoff demand statement is understated, for whatever reason, the beneficiary's recourse is to recover **any sums still owing from the borrower** as an unsecured debt.") (Emphasis added)).

Umpqua now has a postpetition cause of action for unjust enrichment under California law. The majority views this cause of action as untethered to the prepetition loan guaranty. This cannot be correct. Umpqua holds no claim whatsoever against Burke for recovery of the sale proceeds as its collateral because California law granted it no security interest in the sale proceeds. Without the underlying loan guaranty, there is no basis to explain why Burke's retention of the proceeds from the sale of her property was unjust.

## C. Fair Contemplation And Return To The Fray.

### 1. Fair Contemplation.

Because Umpqua's cause of action for unjust enrichment is merely an equitable remedy to collect the balance of a prepetition loan guaranty, no further analysis should be necessary in light of the debtor's discharge. Traditionally, however, postpetition causes of action are scrutinized for discharge purposes under the "fair contemplation test." *SNTL Corp. v.*

8

*Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839 (9th Cir. 2009). Put differently, when the postpetition cause of action accrues does not automatically control. The court instead must ascertain when the claimant could "fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law. " *In re SNTL Corp.*, 571 F.3d at 839 (citing *Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1007 (9th Cir. 2000)). The broad nature of the fair contemplation test is consistent with the Code's expansive definition of a claim to include contingent and unmatured debts. *In re SNTL Corp.*, 571 F.3d at 838-39.

Thus a claim arises prepetition, and is barred by the discharge, when the claimant could fairly or reasonably contemplate the claim's existence prepetition. When the underlying rights giving rise to the claim are set forth in a contract or other writing, the fair contemplation analysis typically focuses on the nature and content of that writing. When the claimant fairly or reasonably could contemplate the existence of the contingent claim from that writing, that claim is a dischargeable prepetition claim. *See, e.g.*, *Goudelock*, 895 F.3d at 638; *In re Castellino Villas, A.K.F. LLC*, 836 F.2d at 1036; *In re SNTL Corp.*, 571 F.3d  at 839. On the other hand, when the liability arises from a violation of law (such as employment discrimination or environmental law), the inquiry typically focuses on when the claimant knew or should have known of the potential, contingent cause of action.

*See, e.g., ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1001-02 (9th Cir. 2006); *Cool Fuel, Inc.*, 210 F.3d at 1007; *Cal. Dept. of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 930 (9th Cir. 1993).

The majority diligently details a number of these Ninth Circuit cases applying the fair contemplation test. In so doing, they reason that *In re ZiLOG, Inc.*, 450 F.3d at 1001-02, is most analogous. *ZiLOG*, however, involved a question of when the claimants' tort claim for discriminatory treatment in the payment of retention bonuses accrued. The Ninth Circuit reversed and remanded the grant of summary judgment where the claimants offered evidence that their claims accrued postpetition.[2] *Id.* at 1001-02 (noting "substantial possibility" that claims "were not within the women's fair contemplation until after the April 30 confirmation order, and thus were outside the bankruptcy process."); *see also id.* at 1007 (if the claims accrued postconfirmation, there was no fair contemplation of any kind, and it recognized that "the women may pursue those claims outside of the bankruptcy proceedings.")

*ZiLOG*, and the other cases on which the majority relies, stand for the proposition that the postpetition accrual of a cause of action is sufficient in certain circumstances to prevent discharge of the underlying debt. This

---

[2] The Ninth Circuit also held that the debtor's actions deprived the claimants of notice that they were required to timely file proofs of claims, and provided that they be allowed to file proofs of claim. *Id.* at 1003-07.

does not, however, mean that the postpetition accrual of a cause of action necessarily renders a claim beyond the scope of the discharge. In *In re Goudelock*, the Ninth Circuit recognized that the debtor's obligation to pay monthly postpetition condominium assessments arose prepetition and was fairly contemplated at the time the debtor purchased the property. 895 F.3d at 638. In reaching this decision, the Ninth Circuit emphasized that "Goudelock's personal obligation to pay [the] assessments was not the result of a separate, post-petition transaction but was created when she took title to the condominium unit." *Id*. For this reason, the unmatured, contingent obligation to pay postpetition assessments qualified as prepetition debt subject to discharge. *Id*.

In this instance, Burke's situation falls much closer to the debtor in *Goudelock* than *ZiLOG*. In *ZiLOG* the claimants were asserting a new postpetition tort action that arose from the denial of their retention bonuses. But here, as in *Goudelock*, there is no new postpetition transaction. Rather, Burke became personally liable for Umpqua's loan when she executed the guaranty prepetition. She also pledged her real property to secure that personal obligation. Having discharged its collateral, Umpqua is left only with a claim to collect the outstanding balance personally against Burke. This is far afield from the tort claims for discrimination that the claimants in *ZiLOG* alleged that they discovered postpetition. Even more so than the postpetition assessments in *Goudelock*, Umpqua seeks to

collect from Burke the exact same prepetition debt, and as such her personal liability was "not the result of a separate, post-petition transaction." Because Umpqua seeks to use a cause of action that accrued postpetition to collect the balance of its prepetition claim, that action remains subject to Burke's discharge.

## 2. Return To The Fray.

The majority sees Burke's retention of the sale proceeds as the new, postpetition act that subjects her to postpetition personal liability. This view focuses on Burke's failure to return to Umpqua the proceeds from the sale of her house as the basis for the unjust enrichment claim. Though recognizing that the "unjustness" of Burke's enrichment has not been litigated, the majority nonetheless offers that the retention of the sale proceeds was equivalent to a "return to the fray," that would render a discharged debtor liable for postpetition attorney's fees on a prepetition debt. *See Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1026-27 (2005). Yet, there is a proverbial cart and horse problem here. First, there is no evidence that Umpqua ever made demand for payment. Second, and more importantly, because Umpqua has no secured interest in the sale proceeds Burke had no legally cognizable duty to return anything to Umpqua. Nor did Burke engage in any conduct causing Umpqua to incur attorney's fees akin to the voluntary, unilateral initiation or resumption of a whole new course of litigation postpetition as would warrant a finding of

12

new liability for returning to the fray. *See, e.g., In re Ybarra*, 424 F.3d at 1026 ("Personal liability for fees incurred through the voluntary pursuit of litigation initiated post-petition is more consistent with the purpose of discharge"); *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 534 (9th Cir. 1998) ("Siegel's decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision"); *contra*, *In re Mighell*, 564 B.R. 34, 45–46 (Bankr. C.D. Cal. 2017) (holding that attorneys' fees "would have been in the fair contemplation of the parties at the time of conversion since this oral contract was allegedly formed approximately nine months before conversion, and 'a whole new course' of litigation was not begun.").

## D.    Equity, Fairness, And Public Policy.

While it is Umpqua's mistake that lead to this situation, absent the bankruptcy discharge it would be entitled to pursue collection of its loan balance from Burke. That Burke's discharge may enable her to receive a windfall runs contrary to long-standing equitable principles. This leads the majority, though careful to say that it is not prejudging whether Burkes's conduct was unjust, to suggest that Burke has acted nefariously and that her conduct was tantamount to waste or fraud – and likely would suffice to give rise to nondischargeability under § 523(a).[3] It also opines that Burke

---

[3] Again, the concepts of waste or fraud imply that Umpqua had an interest in the
(continued...)

13

has used her discharge as a sword rather than a shield, strongly suggesting that she is not the honest but unfortunate debtor the Bankruptcy Code is designed to protect.

I recognize that Burke has received a windfall. But I do not view this windfall as unjust, nefarious, or nondischargeable. Nor do I see it as functionally or legally any different than the "windfall" discharged debtors realize whenever the Code grants them a fresh start and permits them to leave behind their personal liability for preexisting debts. Umpqua must first establish its right to recovery before we judge this debtor. Bluntly put, solely as a result of its own conduct and the operation of California law, Umpqua lost its secured status and was reduced to the status of a creditor holding an unsecured claim against a discharged debtor. While California holds that a personal claim for unjust enrichment exists despite its antideficiency statute, bankruptcy imposes a statutory bar as a pillar of the debtor's fresh start. In short, I disagree that Umpqua's mistaken discharge of its secured interest enables it to sidestep the bankruptcy discharge of the debtor's prepetition guaranty.[4] *See generally Law v. Siegel*, 571 U.S. 415, 421-

---

[3](...continued)
sale proceeds that Burke received. By operation of Cal. Civ. Code 2943(d)(3), it did not.

[4] To the extent this result is unacceptable, it calls for a legislative response. This situation may be redressed by amending Cal. Civ. Code § 2943 to provide  secured creditors with an interest in the sale proceeds when the creditor understates the balance it is owed. Only then – when the creditor actually has a legally cognizable interest in the
(continued...)

22 (2014) (no equitable basis to surcharge debtor's statutory right to exemption).

For the reasons, set forth above, I respectfully dissent.

---

[4](...continued)
sale proceeds – should the creditor be heard to complain that the discharged debtor's refusal to repay the creditor its share of the sale proceeds is legally wrongful.